**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **ACME IP Holdings LLC**<br>73 W Monroe Street<br>Chicago, Illinois 60603<br><br>Plaintiff,<br><br>*v.*<br><br>**Polar Electro Inc.**<br>1111 Marcus Avenue, Ste. M15<br>Lake Success, NY 11042-1034<br><br>*-and-*<br><br>**Polar Electro Oy**<br>Kempele, Finland<br><br>Defendants. | Case No. _____<br><br><br>**COMPLAINT<br>FOR PAST PATENT<br>INFRINGEMENT**<br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT FOR PAST PATENT INFRINGEMENT**

Plaintiff ACME IP Holdings LLC (hereinafter "Plaintiff"), through its attorney, Isaac Rabicoff, complains of the above-named Defendants as follows:

**NATURE OF THE ACTION**

1.     This action is hereby commenced in the U.S. District Court for the Northern District of Illinois against Defendants Polar Electro Inc. and Polar Electro Oy (collectively "Defendants") for past patent infringement under the U.S. Patent Act in connection with Defendants' past unlawful manufacture, importation, sale and use of products that infringed U.S. Patent Nos. 5,343,445 and 5,452,269 (hereinafter the "patents-in-suit").  Prior to expiration of the patents-in-

suit, Defendants enjoyed phenomenal and profitable success in the United States in connection with sales of its activity monitoring products (e.g., wrist worn activity watches/monitors), specifically adapted for use with Polar's foot pod sensor devices (e.g., the Polar S1 Food Pod device also known as an "SDM" or speed and distance monitoring device, the Polar s3+ Foot Pod device, and the Polar Bluetooth Foot Pod device - all of which were manufactured, introduced and sold in the United States prior to expiration of the patents-in-suit). Because many licensees marked licensed products with both of the patents-in-suit in connection with licenses under the patents-in-suit, Defendants had at least constructive notice with regards to its infringing conduct (its sales of actual infringing products) that remains actionable and compensable under the U.S. Patent Act. Others, including Defendants' direct competitors in the activity tracking marketplace, *e.g.* Garmin International, Inc., is a licensed party under the patents-in-suit in relation to devices previously accused of infringement in *Cherdak v. Garmin, et al.*, Case No. 1:13-cv-777 (E.D. Va., 2013) (LO/jfa) (2013). At all relevant times herein, Defendants were direct competitors to Garmin, Pear Sports, Timex, Apple/Nike, Suunto, and other companies in the activity tracking marketplace in which activity trackers, along with infringing, non-staple shoe pod devices, were successfully marketed and sold.

## THE PARTIES

2.     Plaintiff is a registered limited liability company in the state of Illinois, having a principal place of Business at the address specified in the caption of this Complaint.

3.     Defendant Polar Electro Inc. is, on information and belief, a New York Corporation having a principal place of business located at the address specified in the caption of this Complaint.

4.     Defendant Polar Electro Oy is, on information and belief, a Finnish-organized company

having a principal place of business in Kempele, Finland, but also has U.S. based operations through its U.S. entity Polar Electro Inc.

## JURISDICTION AND VENUE

5.     This is an action for past Patent Infringement of U.S. Patent Nos. 5,343,445 and 5,452,269 (per reexamination on two separate occasions) under the Laws of the United States of America and, in particular, under Title 35 of the United States Code.  Accordingly, jurisdiction and venue are proper, based in accordance with §§ 1338(a), 1391(b) and (c), and/or § 1400(b) of Title 28 of the United States Code.

6.     Defendants have engaged in the design, importation, distribution, sale and offering for sale of products including, but not limited to, those which incorporate technologies and the use of methods covered and claimed by the patents-in-suit in the past.   At all times relevant herein, Defendants engaged in the infringement of and/or induced the infringement of and/or contributed to the infringement of the patents-in-suit throughout the United States, including, but not limited to, this judicial district of the Northern District of Illinois.

## FACTS

7.     On July 6, 1993, the former owner of the patents-in-suit filed a first patent application entitled "Athletic Shoe with Timing Device," which resulted in the issuance of U.S. Patent 5,343,445 on August 30, 1994 (hereinafter referred to as the " '445 patent").  On August 29, 1994, that former patent owner filed a Continuation-type application also entitled "Athletic Shoe with Timing Device" which resulted in the issuance of U.S. Patent No. 5,452,269 on September 19, 1995 (hereinafter referred to as the " '269 patent").  The patents-in-suit cover and claim products like those used, made, imported, offered for sale, marketed and sold by Defendants directly and indirectly under the U.S. Patent Act. The patents-in-suit have successfully passed the

United States Patent and Trademark Office's ("USPTO") expert review on three occasions: first, in the early 1990's during initial examination proceedings; second, during *ex parte* reexamination proceedings in 2007-2008; and third, during *ex parte* reexamination proceedings in 2012. Such reexamination proceedings resulted, *inter alia*, in the confirmation of many claims without amendment and the addition of new claims then-submitted to better define the claimed inventions of the '445 and '269 patents. The patents-in-suit, along with their reexamination certificates, are attached in **Exhibits 1-6**. Plaintiff owns all right, title and interest and the patents-in-suit and, as such, has the full right to bring this action for past patent infringement and to seek all available remedies for acts of past patent infringement.

8. Defendants manufactured, marketed and sold wrist-worn activity monitors and related Foot Pod Sensor products for sensing activity metrics related to foot action during activities such as running, jumping, walking and stepping – as contemplated by the patents-in-suit.

9. **<u>EXEMPLARY</u>** infringing products manufactured, marketed, sold and distributed by Defendants throughout the United States, and in this particular judicial district of the Northern District of Illinois, included the POLAR® RS300Xsd boxed set/kit that included a POLAR® heart rate sensor strap (shown behind wrist watch/monitor for wearing around a person's chest), a POLAR® RS300 wrist watch/monitor (middle object), and a POLAR® S1 Foot Pod device (front object on top of the depicted box) intended and instructed by Defendants to be worn on a person's shoe.



This Complaint and this action are **NOT** limited to the **EXEMPLARY** products shown and identified herein. Due discovery in this case will reveal the scope of accused products that are subject to Plaintiff's claims of infringement as specified herein. For example, and not by way of limitation, Defendants manufactured, imported and sold many wrist-worn activity tracking products exclusively designed to work with Defendants' Foot Pod Products to track step and step-related metrics. Accordingly, any reader of this Complaint should NOT assume that identified products in this Complaint are in any way exhaustive.

10.     Defendants have long enjoyed a reputation of producing high quality products utilizing low-power communications protocols in various activity tracking devices (e.g., wrist-worn watches that double as activity monitors) that are interoperable with foot pod sensor products sold as Speed and Distance Monitors ("SDM") products. Such wrist-worn devices act as activity metric manifestation devices giving users real-time or real-time-like data about their performance during activities such as running, walking, jumping, stepping. Such foot pod sensor devices, also referred to as SDM devices, manufactured and marketed by Defendants include the following POLAR® products:



The POLAR® Foot Pod Sensor Product (SDM S1)
(Adapted with Clip for Mounting to a Shoe at its laces)



The POLAR® STRIDE SENSOR BLUETOOTH® SMART
(Adapted for installation on a person's shoe)



The POLAR® s3+ Stride Sensor
(Adapted for installation on a person's shoe)

11.     Defendants advertised its SDM S1 Foot Pod by stating the following: "The Polar S1 foot pod should be just as much a part of your training as your running shoes. Accurately measuring your running speed/pace and distance, this essential piece of [the] kit will be with you every step

of the way. And even though it attaches to your shoe laces, it's so light that you'll forget it's even there, which means it won't affect your running performance." *See* **Exhibit 7**.

12.    Defendants provided a user's guide (**Exhibit 8**) with the S1 Foot Pod product expressly instructing users with regard to the pictures running along the right hand margin as follows:

**Attach Foot Pod on Shoe**
To measure speed/pace and distance accurately, make sure the foot pod is correctly positioned.



1. Undo the flap and detach the foot pod from the fork (see picture 3).
2. Loosen your shoelaces and place the fork underneath them, on top of the tongue of the shoe (see picture 4). Tighten the laces.



3. Fit the front part of the foot pod (closest to the red button) to the fork and press from the rear (see picture 5). Fasten the flap. Make sure the foot pod does not move and is aligned with your foot. The more secure the sensor, the more accurately speed and distance are measured.
4. Turn the foot pod on before exercising. Press and hold the red button on the foot pod until the green light starts flashing (see picture 6).
5. After exercising, turn the foot pod off by pressing and holding the red button until the green light switches off.







13.    Defendants advertised its STRIDE SENSOR BLUE TOOTH device by stating: "The Stride Sensor Bluetooth® Smart is for runners who want to improve their technique and performance. It allows you to see speed and distance information with the Polar Beat app, whether you are running on a treadmill or on the muddiest trail . . . . Measures each stride you take to show running speed and distance . . . ." *See* **Exhibit 11**. According to the USER MANUAL for the BLUETOOTH foot pod stride sensor, POLAR® asserts "[u]sing sensitive inertial sensors, it gives accurate and highly responsive speed, distance, leg cadence and stride length measurements." *See* **Exhibit 12**, page 3.

14.    Defendants advertised its s3/s3+ Stride Sensor device by stating: "The s3+ stride sensor comes with a new, firm shoe attachment which guarantees accurate speed and distance measurement. This small and lightweight sensor measures each stride you take, helping you to analyze the effectiveness and efficiency of your run." *See* **Exhibit 9.** According to the USER

MANUAL for the s3/s3+ foot pod stride sensor, POLAR® asserts "[u]sing sensitive inertial sensors to track the position of the foot it gives accurate and highly responsive speed, distance, leg cadence and stride length measurements." *See* **Exhibit 10,** page 3.

15.     Either or both Defendants filed U.S. Patents and in so doing, pursued, *inter alia*, U.S. Patent Application No. US 2005/0166373A1 entitled "CASE STRUCTURE FOR SENSOR STRUCTURE ATTACHABLE TO AND DETACHABLE FROM A SHOE" (hereinafter referred to as " '373 Patent Application"). In the '373 Patent Application, Fig. 2 illustrates a sensor element (reference numeral 14) described below:



Fig. 2

[0029]   In accordance with **FIG. 2**, the sensor **10***a* comprises a power source **11**, a switch **12**, an electronics unit **13** and a sensor element **14**. The switch **12** can be seen also in **FIGS. 9 and 11**. **FIGS. 3, 5, 7** and **8** show a thinned wall **12***a* of the second locking means, i.e. the upper locking means **24**, or another structure allowing the switch **12** comprised by the case to be opened through it. In **FIG. 2**, the electronics unit **13** controls the operation, modifying and interpreting the measuring results of a sensor element **14**. The switch **12** is used to switch the power source for use by the electronics unit. The sensor element **14** may be for instance a semiconductor acceleration sensor, a piezo or of the MEMS type (Micro-Electro-Mechanical System). The measuring data of the sensor structure can be transferred for instance by means of a radio connection or magnetic telemetry for instance to a wrist receiver, which may a heart rate monitor wristband, for example. The sensor may also comprise a display. Acceleration measurements can be used for instance to find out the speed, the distance, the number of steps, the length of steps and the path of the step.

*See* '373 Patent Application, para. 0029. The '373 Patent Application, and its illustrations and descriptions of the structures and operations within Polar SDM products, reads as literal and direct patent infringement relative to the patents-in-suit.

16. Defendants, either alone or in concert, manufactured, marketed, imported and sold numerous monitoring devices that are compatible, and operate in conjunction, with the foot pod devices discussed herein. *See* **Exhibit 13.**

17. The famous website and blog www.dcrainmaker.com issued several reviews of POLAR® products, along with wrist worn watches and monitors that operate in direct conjunction with POLAR® branded foot pod devices, including the foot pod devices mentioned and shown herein. *See* **Exhibit 14**. It is clear from the dcrainmaker blog, and on other information and belief, that POLAR® branded foot pod devices include accelerometer based sensor devices to sense movements relative to human gait, or what is commonly referred to as "stride", in order to determine steps, step or jump speed, distance over time, pace and other functions. *Id.* Defendants made their wrist worn monitors capable of communicating with foot pod sensor devices to gather, process and manifest content and messages related to a person's activity performance. Some, but not all, additional POLAR® branded activity monitors sold by Defendants prior to expiration of the patents-in-suit included the following devices:





|POLAR® RS 200|POLAR® RS 400|POLAR® RC3 GPS|
|Training Computer|Training Computer|Training Computer|

18.     Defendants' foot pod sensor and related products (e.g., wrist-worn data monitoring and manifestation devices) have been imported, marketed, offered for sale and sold by Defendants to operate by sensing when a shoe leaves and returns to the ground – exactly how the U.S. District Court for the Eastern District of Virginia previously held the '445 patent operates.  *See* **Exhibit 15**, page 6 (holding "[t]he 445 patent senses when a shoe leaves and returns to the ground.").

19.     Prior to the natural expiration of the patents-in-suit, other manufacturers and marketers of similar and licensed products were obligated under contract to include patent markings related to the patents-in-suit in connection with their sales of licensed foot pod sensor products and products including licensed foot pod sensors.  For example, and not by way of limitation, Pear Sports, LLC marked the products within its PEAR ONE™ product line with the patents-in-suit as follows: "Products may be covered by one or more of the following patents until their expiration: USP 5,343,445 and USP 5,452,269.  Products sold under license." Other parties also marked their product offerings including with legends reading "Covered by one or more of U.S. Patent          Nos. 5,343,445 and 5,452,269."     *Previously     available     at* http://www.bioness.com/L300_for_Foot_Drop.php.

20.     Defendants had knowledge of the patents-in-suit. They long knew that its direct competitors including, but not limited to, GARMIN, TIMEX, SUUNTO, APPLE/NIKE and PEAR SPORTS, were involved in developing shoe-based stride/step sensor products inserted into and/or affixed within the laces of a shoe to gather step-related activity data and to wirelessly transmit that data to a mobile data reception and processing device also acting as a step-data manifestation device.

21.     Defendants closely watched and observed the products of its direct competitors, and such competitors were sued in relation to, and ultimately licensed under, the patents-in-suit. Defendants also knew of the numerous patent markings related to the patents-in-suit and/or the fact that the patents-in-suit were actively litigated against directly competing activity tracking and shoe-based sensor products (e.g., GARMIN based sensor products).  Defendants are very observant of their competitors, especially in the activity-tracking marketplace. Defendants often bring suits and claims for patent infringement against entities alleged to import and sell competing activity tracking products in interstate commerce.  *See*, *e.g.* *Polar Electro Oy v. Suunto Oy et al.*, C.A. No. 11-1100-GMS (D. Del.).  Defendants very closely observed direct competitors in the Foot Pod SDM marketplace.

22.     Defendants expressly instructed its customers and end-users to infringe the patents-in-suit by instructing them to install infringing SDM Foot Pod devices in shoes operable with correspondingly configured reception and manifestation devices (e.g., wrist-worn monitors), in accordance with commercially successful products similar to the RS300 class of products shown and described in this Complaint.

23.     Defendants' SDM products and, in particular, its foot pod devices are non-staple items of commerce that were designed to operate as the material components of at least the claims

specified in Count I of this Complaint.    By their very nature, Defendants' SDM Foot Pod products have no non-infringing use: they are devices intended to be worn in shoes to detect foot based metrics, such as when a shoe is off the ground and in the air during jumps, running and other step-based activities in order to discern step-related data.

## COUNT I – PAST PATENT INFRINGEMENT

24.    Paragraphs 1 through 23 above are hereby incorporated by reference as completely set forth herein.

25.    Given the validity and enforceability of the patents-in-suit against past acts of patent infringement under the U.S. Patent Act (35 U.S.C. § 1, *et seq*.), Plaintiff, *inter alia*, possesses the right to pursue a claim against Defendants for its past use, manufacture, importation, sale, offer for sale and distribution of infringing products under 35 U.S.C. § 271(a) (direct infringement), (b) (induced infringement), and (c) (contributory infringement). Defendants infringed, contributed to the infringement of and/or induced the infringement of the patents-in-suit in violation of 35 USC § 271(a), (b), and/or (c) by its design, use, manufacture, importation, distribution, sale and offer for sale of products sold under the POLAR® house mark.  Such infringing products included some type of foot-based sensor device (e.g., the S1 foot pod sensor device) to be used in combination with a manifestation device coupled to said foot-based sensor device.  Defendants refer to the foot-based sensor devices as "foot pods," and the manifestation device as a monitor or activity monitor or "training computer[s]."  The foot pod is to be worn on or in a person's shoe, while the manifestation device is typically worn on the person's wrist.

26.    Defendants' foot pod sensor alone and/or in combination with certain POLAR® branded wrist-worn receivers and activity monitors and manifestation devices infringed both of the patents-in-suit.  The following preliminary claim charts have been prepared during Plaintiff's

pre-filing investigation and are meant to be preliminary in nature. The following infringement charts demonstrate exemplary infringement in relation to **at least**, the following exemplary asserted claims:

| Claim 10 of U.S. Patent No. 5,343,445 C1 | Exemplary Infringement Situation POLAR BRANDED PRODUCTS (e.g., the POLAR RS300Xsd Retail Product Pack) |
|---|---|
| 10. A method for measuring and indicating hang time off the ground and in the air during a jump by a person wearing an athletic shoe, said method comprising the steps of: | POLAR® RS300Xsd Retail Product Pack:  According to Defendants: "The Polar S1 foot pod should be just as much a part of your training as your running shoes. Accurately measuring your running speed/pace and distance, this essential piece of kit will be with you every step of the way. And even though it attaches to your shoe laces, it's so light that you'll forget it's even there, which means it won't affect your running performance." *See* **Exhibit 7**. Speed in a conventional context is a scaler value computed as distance covered over time (s = d/t). Thus, the foot pod measures the passage of time between certain aspects of a person's step or stride. |
| (a) measuring in the shoe elapsed time between the shoe leaving the ground and returning to the ground; | This claimed method step literally reads on the Accused Products. Elapsed time is measured between the shoe leaving the ground and returning to the ground. Such measuring occurs within the foot pod sensor device as part of sensing stride parameters based on timing operations. |
| (b) from the elapsed time measured in step (a), determining in said shoe whether said person has jumped off the ground or taken a walking or running step; and | This claimed method step literally reads on the Accused Products. Circuitry within the foot pod sensor determines whether a person has jumped off the ground, taken a walking step or a running step. |

| | |
|---|---|
| (c) upon determining in step (b) that the person has jumped off the ground, providing an indication at said shoe, perceptible to said person, of the elapsed time measured in step (a). | This claimed method step literally reads on the Accused Products. Upon determining in step (b) whether the person has jumped off the ground (e.g., during a running sequence involving a series of jumps), the Accused products will provide an indication in, on or near the shoe of the elapsed time measured in step (a). The infringing combination of Accused Products utilize close-proximity radio frequency technologies that call for the foot pod sensor device and the wrist worn visual display device to be near each other to realize effective communications. The foot pod sensor will determine many activity-based metrics over time (e.g., pace, speed and other time-based data). The wrist-worn component of the infringing combination provides a visual indication that is perceptible (visible) to the person. |

| Claim 12 of U.S. Patent No. 5,452,269 C1 | Exemplary Infringement Situation POLAR BRANDED PRODUCTS (e.g., the POLAR RS300Xsd Retail Product Pack) |
|---|---|
| 12. The method of measuring hang time off the ground and in the air of an individual, said method comprising the steps of: | POLAR® RS300Xsd Retail Product Pack:  According to Defendants: "The Polar S1 foot pod should be just as much a part of your training as your running shoes. Accurately measuring your running speed/pace and distance, this essential piece of kit will be with you every step of the way. And even though it attaches to your shoe laces, it's so light that you'll forget it's even there, which means it won't affect your running performance." *See* **Exhibit 7**. Speed in a conventional context is a scaler value computed as distance covered over time (s = d/t). Thus, the foot pod measures the |

| | passage of time between certain aspects of a person's step or stride. |
|---|---|
| (a) providing in an athletic shoe a selectively actuable timing device; | This claimed method step literally reads on the Accused Products. Defendants instruct that the Foot Pod Sensor is placed on or in the athletic shoe attached within a shoe's laces or in a pocket formed in a sole member of the shoe. |
| (b) actuating said timing device to measure elapsed time in response to said athletic shoe leaving the ground and elevating into the air; | This claimed method step literally reads on the Accused Products. Timing circuitry/processes within the Foot Pod Sensor is actuated to measure elapsed time in response to an athletic shoe leaving the ground and elevating into the air. |
| (c) deactuating said timing device in response to said athletic shoe returning to the ground; and | This claimed method step literally reads on the Accused Products. Timing circuitry/processes within the Foot Pod Sensor is deactuated upon the athletic shoe returning the ground. |
| (d) providing an indication at said athletic shoe representing the time interval between actuation of said timing device in step (b) and deactuation of said timing device in step (c). | The Accused Products provide an indication (e.g., pace) in, on or near the athletic shoe. The indication is a visible indication, and represents the time interval between actuation and deactuation of timing device circuitry within the Foot Pod Sensor. |

| Claim 25 of U.S. Patent No. 5,343,445 C2 | Exemplary Infringement Situation POLAR BRANDED PRODUCTS (e.g., the POLAR RS300Xsd Retail Product Pack) |
|---|---|
| 25. A method for indicating time off the ground and in the air during an activity including a jump, a walking step, a running step, or a skating lift by a person wearing an athletic shoe suitable to said activity, said method comprising the steps of: | POLAR® RS300Xsd Retail Product Pack:  According to Defendants: "The Polar S1 foot pod should be just as much a part of your training as your running shoes. Accurately measuring your running speed/pace and distance, this essential piece of kit will be with you every step of the way. And even though it attaches to your shoe laces, it's so light that you'll forget it's even |

| | there, which means it won't affect your running performance." *See* **Exhibit 7**. Speed in a conventional context is a scaler value computed as distance covered over time (s = d/t). Thus, the foot pod measures the passage of time between certain aspects of a person's step or stride. |
|---|---|
| (a) sensing, within said shoe, pressure imparted to said shoe when said leaves the ground during said activity; | This claimed method step literally reads on the Accused Products. As noted above, Defendants instruct consumers the Foot Pod Sensor is to be placed on or in the athletic shoe, such as in a pocket formed in a sole member of the shoe or within the laces of the shoe. The Foot Pod Sensor senses the existence of pressure (force over area) imparted to the shoe when the shoe leaves the ground (e.g., at a toe-off point in time), during an activity such as a walking or running step, for example. |
| (b) sensing, within said shoe, pressure imparted to said shoe when said shoe returns to the ground at the end of said activity; and | This claimed method step literally reads on the Accused Products. The Foot Pod Sensor senses the existence of pressure (force over area) imparted to the shoe when the shoe returns to the ground (e.g., at a heel strike) during an activity such as a walking or running step, for example. |
| (c) activating, within said shoe, a messaging device in relation to the time interval between said shoe leaving and returning to the ground as sensed in steps (a) and (b), respectively, said messaging device providing an indication related to said time interval in a manner perceptible to said person. | This claimed method step literally reads on the Accused Products. Timing circuitry/processes within the Foot Pod Sensor activates (e.g., send data, signals, commands for operation) a messaging device that may be located at the shoe or otherwise such as on the wrist of a person. The messaging device is the watch unit and is configured to provide an indication related to the time interval occurring between when the shoe leaves and later returns to the ground. |

| Claim 28 of U.S. Patent No. 5,343,445 C2 | Exemplary Infringement Situation POLAR BRANDED PRODUCTS (e.g., the POLAR RS300Xsd Retail Product Pack) |
|---|---|
| 28. The method according to claim 25, wherein said messaging device activated during said activating step (c) is worn on said person and remotely from shoe. | POLAR® RS300Xsd Retail Product Pack: |

| | |
|---|---|
| |  |
| | The messaging device is located within a watch device to be worn on the wrist of its user and is activated during the activating step (c) of Claim 25.  In radio-communication with the Foot Pod Sensor, the messaging device is located remotely from the shoe. |

27.    In relation to Plaintiff's claim for contributory infringement, Plaintiff also provides an additional claim chart for Claim 19 of the '445 patent-in-suit to demonstrate that Defendants' infringing products provide the key, non-staple and material elements of the infringing products as follows:

| Claim 19 of U.S. Patent No. 5,343,445 C1 | Exemplary Infringement Situation POLAR BRANDED PRODUCTS (e.g., the POLAR RS300Xsd Retail Product Pack) |
|---|---|
| 19. An athletic shoe comprising: | POLAR® RS300Xsd Retail Product Pack:  According to Defendants: "The Polar S1 foot pod should be just as much a part of your training as your running shoes. Accurately measuring your running speed/pace and distance, this essential piece of kit will be with you every step of the way. And even though it attaches to your shoe laces, it's so light that you'll forget it's even there, which means it won't affect your running performance." *See* **Exhibit 7**. Speed in a conventional context is a scaler value computed as distance covered over time (s = d/t). Thus, the foot pod measures the passage of time between certain aspects of a person's step or stride. Defendants' own writings teach, show and instruct users to place a foot pod device within the laces of a shoe. *See* images (above) as provided by Defendants in which a foot pod is inserted into the laces of an athletic shoe having a sole and an upper. |
| a sole; | Defendants' own writing admits an athletic shoe having a sole. *See* images in preamble section of this claim on accused combinations demonstrating contributory infringement. |
| a shoe upper mounted on said sole; | Defendants' own writings admit of an athletic shoe having a shoe upper mounted to the sole. *See* images in preamble section of this claim on accused combinations demonstrating contributory infringement. |
| pressure responsive means for responding to pressure imparted to said shoe during a jump, for providing a signal in response to said shoe leaving the ground at the beginning of said jump, and for removing said signal in | The infringing products shown and described in this Complaint include sensor/circuit elements that are configured to respond to pressures (forces over areas of the shoe) during motion of the shoe when worn by a |

| | |
|---|---|
| response to said shoe returning to the ground at the end of said said jump. | person during a stepping operation. Signaling states of such a sensor (e.g., a MEMS accelerometer) change over time and are discerned by Defendants' foot pod SDM devices to be steps deriving step counts literally taught and described in the patents-in-suit. |
| circuit means in said shoe actuable in response to said signal; and | Defendants' SDM products absolutely respond to signaling states of the sensors mounted to a shoe. |
| indicator means at said shoe responsive to actuation of said circuit means for providing a perceptible indication related to the time said shoe is off the ground. | Defendants' SDM product includes LEDs visible by a wearer of the shoe in which the SDM product is mounted. Additionally, Defendants' SDM products are configured with radio-transmission facilities (e.g., blue-tooth) to transmit SDM and step metric related information to a remote location (e.g., to a wrist-worn device). In the case of a transmitter transmitting data to wrist worn device, such a device may manifest (e.g., display) a perceptible indication related to the time that shoe is off the ground (e.g., a step count as steps involve a shoe leaving and returning to the ground). |

28. Discovery in this case will likely reveal additional instances of infringement related to additional products and claims of the patents-in-suit.

29. Defendants' products infringed the patents-in-suit both directly and indirectly under 35 U.S.C. §§ 271(a), (b) and (c) literally and/or under the Doctrine of Equivalents. Given the sole and intended purpose of Defendants' foot pod sensor products to measure and determine time-based foot-action metrics during activities where a person's foot leaves and returns to the ground, Defendants' products were specifically designed to operate in non-staple infringing ways. And, on information and belief, Defendants have infringed the patents-in-suit in violation of 35 U.S.C. § 271(b) by actively inducing distributors, customers and/or other retailers to infringe the patents-in-suit through marketing and technical documentation.

30. On information and belief, Defendants have made, and/or have had made on their behalf, infringing products and have marketed the same throughout the U.S. and, in particular, in this judicial district of the Northern District of Illinois.

31.     Because of Defendants' past infringing activities in the marketplace, Plaintiff has been injured. Thus, the U.S. Patent Act mandates that Plaintiff be granted remedies including damages for past infringement in an amount of no less than a reasonable royalty. The Court is informed that licensing terms exist calling for such reasonable royalties on a per-unit basis in relation to sales of foot pod sensor products and related messaging devices that may be coupled thereto. For example, and certainly not by way of limitation, Plaintiff is entitled to an established reasonable royalty rate of $2.25 per SDM Foot Product and/or kit sold in the United States by Defendants. On good and reliable information, Defendants sold more than 200,000 SDM Foot Pod and Foot Pod related products before the patents-in-suit expired.

32.     Because of the subjectively willful nature of Defendants' past infringing activities in violation of 35 USC §§ 271 (a), (b) and (c), Plaintiff is entitled to enhanced damages of no less than treble damages as permitted by the U.S. Patent Act (35 U.S.C. § 1, *et. seq.*), along with attorneys' fees and costs of the suit. In particular, Defendants have acted despite an objectively high likelihood that its actions constitute infringement of the valid, enforceable patents-in-suit, and Defendants have so acted despite an objectively high risk of infringement that was known or was so obvious that it should have been known to in the marketplace in which it competes.

## PRAYER FOR RELIEF

        WHEREFORE Plaintiff prays for judgment and relief from Defendants as follows:

1.      For a judgment that the patents-in-suit were infringed by Defendants (including, but not limited to, their subsidiaries, predecessors-in-interest and business units however and wherever formed), each standing alone as described herein as they have independently acted to bring to market and encourage the infringing use of products within their respective product lines;

20

2. That Defendants' report of the exact and total amount of devices like and similar to those discussed in this Complaint configured to operate with such devices are the same devices imported into the U.S., and were sold and/or offered for sale in the U.S.

3. That damages be assessed at no less than a reasonable royalty in regard to acts of patent infringement by Defendants as complained of herein together with pre-judgment and post-judgment interest and costs of suit;

4. That any damages awarded in accordance with any prayer for relief be enhanced, and, in particular, trebled in accordance with the U.S. Patent Act (35 USC § 1, *et seq.*) for Defendants' acts which are found to be willful acts of patent infringement; and

5. Such other and further relief as this Court shall deem just and proper.


## **JURY DEMAND**

Under Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff respectfully requests a trial by jury on all issues.


Dated: <u>November 21, 2016</u>


Respectfully submitted,

<u>/s/ Isaac Rabicoff</u>
Counsel for Plaintiff


Isaac Rabicoff
ACME IP Holdings LLC
73 W Monroe St
Chicago, IL 60603
773-669-4590
isaac@rabilaw.com

Exhibits List:

| | |
|---|---|
| 1 | U.S. Patent No. 5,343,445 |
| 2 | Reexamination Certificate for U.S. Patent 5,343,445 C1 |
| 3 | Reexamination Certificate for U.S. Patent 5,343,445 C2 |
| 4 | U.S. Patent No. 5,452,269 |
| 5 | Reexamination Certificate for U.S. Patent 5,452,269 C1 |
| 6 | Reexamination Certificate for U.S. Patent 5,452,269 C2 |
| 7 | Website printout relating to POLAR® S1 Foot Pod Device |
| 8 | User Manual relating to POLAR® S1 Foot Pod Device |
| 9 | Website printout relating to POLAR® s3/s3+ Foot Pod Device |
| 10 | User Manual relating to POLAR® s3/s3+ Foot Pod Device |
| 11 | Website printout relating to POLAR® Bluetooth Foot Pod Device |
| 12 | User Manual relating to POLAR® Bluetooth Foot Pod Device |
| 13 | Listing of Foot Pod Compatible Devices Sold by Defendant Polar |
| 14 | Blog printout from dcrainmaker.com |
| 15 | Memorandum Opinion in Case No. 1:11-cv-1311 LO/jfa dated 4/23/2012 |